UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**MICHAEL RAY DESPAIN**                                                              **PLAINTIFF**

v.                                                              **CIVIL ACTION NO. 3:14CV-P602-DJH**

**CITY OF LOUISVILLE** *et al.*                                                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is currently before the Court on initial review pursuant to 28 U.S.C. § 1915A of Plaintiff Michael Ray DeSpain's *pro se* complaint. For the reasons that follow, the Court will dismiss a portion of the complaint and allow the remaining claims to proceed.

### I. SUMMARY OF CLAIMS

Plaintiff is a pretrial detainee currently incarcerated in the Kentucky State Reformatory (KSR). He brings suit under 42 U.S.C. § 1983 against the following Defendants: City of Louisville; Louisville Metro Police Chief Steven Conrad; Lt. Kit Stemile, Supervisor of Louisville Metro Police Department (LMPD) Viper Squad; Det. Chad Stewart; M. Nobles; A. Browning; D. Hyche; D. Henzley; T. McKnight; J. Mattingly; T. James; J. Casse; J. Judah; Lt. Ryan C. Bates, Supervisor/Commander of SWAT; and 25 Unknown SWAT Team Agents. He sues each Defendant in his or her individual and official capacities.

According to the complaint, on September 18, 2013, Defendants "Chad Stewart et.al and twenty-five (25) unknown SWAT team officers came to the plaintiffs' home and executed a search warrant they claim was from Hon Mitch Perry . . . ." At approximately 4:30 p.m., while Plaintiff was at home, "the front windows crashed and two flash grenades exploded near plaintiffs face and back and set furniture on fire and defendants intentionally tear sofa cushions as they toss them threw the window." Defendants "Chad Stewart et.al. intentionally knock out

windows from the inside with their guns after plaintiffs already in custody, then come back and knock out window casings from the mortar." Plaintiff claims that "[a]t no time did Chad Stewart et.al. ever attempt to knock or announce his presence before knocking out windows." He continues:

> 5. Plaintiff sat on sofa after flash bangs with hands up guarding his face. Plaintiff was blinded and stunned when one member of the twenty-five (25) unknown SWAT team defendants ran up and kicked plaintiff twice in the chest
>
> 6. Plaintiff was removed from the sofa and thrown into the floor; plaintiff was kicked, stomped and fisted numerous times by two (2) SWAT team members. Plaintiff was then dragged out onto the front porch and kicked, stomped and fisted numerous times by Four (4) SWAT team members. One of the SWAT team members held onto the porch column to gain balance as he continued to stomp plaintiff. Plaintiff remembers being woke up from unconsciousness, then tazed and beat more while still on front porch.
>
> 7. Plaintiff was then dragged out into front yard and placed in a sitting position. Plaintiff was denied E.M.S. medical treatment other than removing tazer darts from his back and given neck brace. Plaintiff was transported to jail, but was only there for 13 days and then transported to K.S.R. for medical do to his medical condition. Plaintiff previously had three major neck surgeries with (plate, screws, cables and spacers) inserted.

Plaintiff reports that he requires "further studies with M.R.I. or CT scan but due to monetary constraints of D.O.C. [presumably the Department of Corrections] plaintiff has been placed in wheel chair in order to prevent paying for any further studies." He claims that it feels like his plate, screws, cables, and spacers "have been stomped loose," and he reports that he continues to experience "excruciating pain."

Plaintiff asserts that he noticed Defendant Stewart "added words to his investigation report after he completed his search and seizure." Defendant Stewart allegedly added "'plaintiff was trafficking in marijuana'" and "'plaintiff has a grow operation in his residence.'" According to Plaintiff, these statements were added "to justify the excessive damages that was done to residence and the plaintiff." He further maintains that on March 31, 2014, after receiving

2

discovery, he learned that his home security recorder had been tampered with after he viewed the DVD.

Plaintiff identifies Defendant Det. Stewart as the "assigned assessor and lead detective for plaintiffs residence" on September 18, 2013, and claims that Defendant Det. Stewart had a duty and was legally responsible "for the complete operations, supervision of Viper Squad, and SWAT Team; this is including the conduct of those under his supervision." He further identifies Defendant Bates as the "Unit Supervisor/Commander of the LMPD SWAT Team" on September 18, 2013, and claims that Defendant Bates had a duty and was legally responsible "for all operations, commands and equipment along with the proper training to prevent civil right violations."

Additionally, Plaintiff asserts that Defendants City of Louisville and Chief Conrad, on September 18, 2013, had a duty and legal responsibility for the "operations, up-keep and proper training" for the employees of the LMPD. He further asserts that Defendant Lt. Stemile, on September 18, 2013, was commander/supervisor and had a duty and legal responsibility "for proper Organization and training to prevent civil rights from being violated by the LMPD Viper Squad unit, and is legally responsible for all operations handled by the Viper Squad . . . ."

As relief, Plaintiff seeks monetary and punitive damages.

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from

such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### III. ANALYSIS

#### A. Claims Against the City of Louisville and the Official-Capacity Claims Against All Other Defendants

The Court construes the claims against the City of Louisville as being brought against the merged Louisville Metro Government and will direct the Clerk of Court to amend the caption

accordingly.[1]  *See Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 14 (Ky. Ct. App. 2009) (indicating that "Louisville/Jefferson Metro Government is the post-merger successor to the City of Louisville"); *St. Matthews Fire Prot. Dist. v. Aubrey*, 304 S.W.3d 56, 60 (Ky. Ct. App. 2009) (stating that "Jefferson County and the City of Louisville have merged to form the Louisville Metro Government").  As to the official-capacity claims against all other Defendants, such claims "'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  Therefore, Plaintiff's claims against all Defendants in their official capacities also are brought against the Louisville Metro Government.  *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  *Monell*, 436 U.S. at 694.

> There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

---

[1] In 2003, the City of Louisville government merged with the surrounding Jefferson County government and formed what is now referred to as the Louisville/Jefferson County Metro Government (Louisville Metro Government). See http://www.louisvilleky.gov.  Therefore, the separate governmental entity of the City of Louisville no longer exists.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) ("[T]he Supreme Court has held that a municipality can be liable under § 1983 on a failure-to-train theory when the 'failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'") (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Here, Plaintiff is alleging that Louisville Metro Government and Chief Conrad had a duty and legal responsibility for "proper training" of LMPD employees and to prevent civil rights from being violated and that Lt. Stemile had a duty and legal responsibility for "training to prevent civil rights from being violated by the LMPD Viper Squad unit." **The Court liberally construes Plaintiff's complaint, as it must, as asserting a claim against the Louisville Metro Government for a failure-to-train LMPD officers/Viper Squad officers in the execution of a search warrant and will allow that claim to continue**. As this claim is proceeding directly against the Louisville Metro Government, the Court will dismiss the official-capacity claims against all other Defendants without prejudice as redundant to and subsumed by the continuing claim against their employer, the municipality. *See Von Herbert v. City of St. Clair Shores*, 61 F. App'x 133, 140 n.4 (6th Cir. 2003) (Krupansky, dissenting) ("Herbert's official-capacity federal claims against [the individual defendants] were redundant, because they were subsumed by her § 1983 charge against the city."); *Smith v. Brevard Cnty.*, 461 F. Supp. 2d 1243, 1251 (M.D. Fla. 2006) (dismissing claims against individuals sued in their official capacity as redundant where their employer was also named as a defendant); *Smith v. Bd. of Cnty. Comm'rs of Cnty. of Lyon*, 216 F. Supp. 2d 1209, 1219-20 (D. Kan. 2002) (dismissing the claim against the sheriff sued only in his official capacity as redundant since the governmental entity of which he was an officer or agent was also a defendant in the action).

### B. *Individual-Capacity Claims*

#### 1. *Police Chief Conrad and Lt. Kit Stemile*

Plaintiff seeks to hold Defendants Conrad and Stemile liable based on their supervisory positions as Chief of Police and Commander/Supervisor of the LMPD Viper Squad Unit, respectively. The doctrine of *respondeat superior*, or the right to control employees, however, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Additionally, "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). "[P]roof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

In reading the complaint liberally, the Court finds no indication that either Defendant Conrad or Stemile were present during or had any direct involvement in the alleged wrongful conduct occurring in September 2013 and March 2014. The Court, therefore, will dismiss the individual-capacity claims against Defendants Conrad and Stemile for failure to state a claim upon which relief can be granted.

#### 2. *Current Denial of Medical Treatment at KSR*

Plaintiff claims that he needs an MRI or CT scan but that "due to monetary constraints of D.O.C. plaintiff has been placed in wheel chair in order to prevent paying for any further

studies." He reports currently being denied medical treatment in violation of the U.S. and Kentucky Constitutions. Plaintiff does not name any Defendant responsible for the current denial of medical treatment. Instead, since Plaintiff is currently incarcerated in KSR, any claim of currently denied medical treatment must be brought against persons at the KSR in a separately filed action. Accordingly, should Plaintiff wish to file suit regarding his current medical treatment, the Court will direct the Clerk of Court to send Plaintiff a § 1983 packet for his use.

### 3. *Remaining Claims*

Plaintiff alleges that "Chad Stewart and defendants" or "Chad Stewart et.al." performed an illegal search and seizure, caused excessive property damage and used excessive force during the illegal search and seizure, intentionally destroyed physical evidence, and refused EMS medical treatment and that Defendant Stewart falsified his investigative report. The Court liberally construes the claims against "Chad Stewart and defendants" and "Chad Stewart et.al." as against Defendants Stewart, Nobles, Browning, Hyche, Henzley, McKnight, Mattingly, James, Casse, Judah, Bates, and the 25 Unknown SWAT Team members. Reading the complaint in a light most favorable to Plaintiff, the Court concludes that Plaintiff is alleging that all of the foregoing Defendants were present during the allegedly illegal search and seizure and involved in the allegedly wrongful conduct listed above.

As to the remaining claims, Plaintiff alleges violations of the Fourth, Fourteenth, and Thirteenth Amendments to the U.S. Constitution. The Court will allow the Fourth and Fourteenth Amendment claims to continue. *See, e.g.*, *Rakas v. Illinois*, 439 U.S. 128, 159-60 (1978) ("Though the [Fourth] Amendment protects one's liberty and property interests against unreasonable seizures of self and effects, 'the primary object of the Fourth Amendment [is] . . . the protection of privacy.'") (quoting *Cardwell v. Lewis*, 417 U.S. 583, 589 (1974) (plurality opinion)) (alteration in *Rakas*); *Boone v. Spurgess*, 385 F.3d 923, 934 (6th Cir. 2004)

("Ultimately, there seems to be no logical distinction between excessive force claims and denial of medical care claims when determining the applicability of the Fourth Amendment. Because we conclude that under either [the Fourth or Fourteenth Amendment] standard, Boone has not made out a claim, we do not decide this issue, but instead reserve it for a more appropriate case."). The Court will dismiss the Thirteenth Amendment claim as wholly inapplicable to the facts raised in the complaint. *See United States v. Kozminski*, 487 U.S. 931, 942 (1988) ("The Thirteenth Amendment declares that '[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.'").

Plaintiff also alleges violations of Kentucky Constitution Sections 10 ("Security from search and seizure; conditions of issuance of warrant"); 17 ("Excessive bail or fine, or cruel punishment, prohibited"); 27 ("Powers of government divided among legislature, executive, and judicial departments"); and 28 ("One department not to exercise power belonging to another"). As only Section 10 is applicable to the facts alleged, the Court will dismiss the claims under Sections 17, 27, and 28.

To summarize, the Court will allow the remaining claims to continue against Defendants Stewart, Nobles, Browning, Hyche, Henzley, McKnight, Mattingly, James, Casse, Judah, Bates, and the 25 Unknown SWAT Team members in their individual capacities under the Fourth and Fourteenth Amendments to the U.S. Constitution and Section 10 of the Kentucky Constitution. As to the 25 Unknown SWAT Team members, the Court advises that Federal Rule of Civil Procedure 4 provides, in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court-- on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P 4(m). Because the Court is required to screen the complaint prior to service, the Court will count the 120 days from the date of this Memorandum Opinion and Order. Accordingly, Plaintiff has 120 days from the date of this Memorandum Opinion and Order within which to move to amend his complaint to name specific Defendants or show good cause for his failure to do so.[2]

## IV. ORDER

For the foregoing reasons, **IT IS ORDERED** as follows:

(1) The individual-capacity claims against Defendants Conrad and Stemile are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

(2) All official-capacity claims are **DISMISSED without prejudice to the continuing claim against the Louisville Metro Government**.

(3) The claims under the Thirteenth Amendment to the U.S. Constitution and Sections 17, 27, and 28 of the Kentucky Constitution are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

(4) **As all claims against Defendants Conrad and Stemile are dismissed, the Clerk of Court is DIRECTED to terminate them as parties to this action.**

(5) The Louisville Metro Government, as legal successor to the City of Louisville, is the proper Defendant and the **Clerk of Court is DIRECTED to amend the caption to reflect the Louisville Metro Government as the proper Defendant in this action**.

---

[2]This Order shall in no way constitute a determination that Plaintiff's claims against any later named defendants would be timely.

(6)  **The following claims shall proceed:  the failure-to-train claim against the Louisville Metro Government and the individual-capacity claims under the Fourth and Fourteenth Amendments to the U.S. Constitution and Section 10 of the Kentucky Constitution against Defendants Stewart, Nobles, Browning, Hyche, Henzley, McKnight, Mattingly, James, Casse, Judah, Bates, and the 25 Unknown SWAT Team members for illegal search and seizure, excessive property damage, excessive force, intentional destruction of physical evidence, and refusal of EMS medical treatment and against Defendant Stewart for falsifying his investigative report.**  In allowing these claims to continue, the Court passes no judgment on the merit and ultimate outcome of this proceeding.  The Court will enter a separate Order Directing Service and Scheduling Order to govern the development of these continuing claims.

(7)  Within **120 days** from the entry date of this Memorandum Opinion and Order, Plaintiff must move to amend his complaint to name specific Defendants or show good cause for his failure to do so.  Plaintiff is put on notice that his failure to meet the requirements of the Federal Rules of Civil Procedure may **result in dismissal** of this action as to the 25 Unknown SWAT Team Defendants.

(8)  The **Clerk of Court is DIRECTED** to send Plaintiff a § 1983 packet should he wish to file a new action regarding his current medical treatment at KSR.

Date: January 27, 2015

**David J. Hale, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
    Defendants
    Jefferson County Attorney
4415.005

11