UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL RAY DESPAIN | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:14-CV-P602-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| LOUISVILLE METROPOLITAN | ) | **MEMORANDUM OPINION AND** |
| GOVERNMENT *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is before the Court on cross-motions for summary judgment.  Defendants, Louisville/Jefferson County Metro Government ("Metro Government"), Chad Stewart, M. Nobles, A. Browning, D. Hyche, D. Henzley, T. McKnight, J. Mattingly, T. James, J. Casse, J. Judah, Ryan Bates (collectively "Individual Defendants"), and the SWAT Defendants[1] move for summary judgment regarding all remaining claims of Plaintiff. [R. 141] Plaintiff, Michael Ray DeSpain, filed a response, [R. 159], and Defendants filed a reply, [R. 162].  Likewise, Plaintiff filed a motion for summary judgment. [R. 164] Defendants filed a response, [R. 165], and Plaintiff filed a reply, [R. 169]. Also before the Court is Plaintiff's Motion to Request an Expert "Handwriting Analysis" Witness to Assist with Scientific, Technical, or Other Specialized Knowledge in Authenticating Legal Documents ("Motion to Request an Expert"). [R. 172]

For the following reasons, Defendants' Motion for Summary Judgment, [R. 141], is **GRANTED**; Plaintiff's Motion for Summary Judgment, [R. 164], is **DENIED**; and Plaintiff's Motion to Request an Expert, [R. 172], is **DENIED as moot**.

---

[1] The Court dismissed the SWAT Defendants by a separate Memorandum Opinion and Order entered today.

## I.  BACKGROUND

This is a *pro se* prisoner civil-rights action.  Plaintiff Michael Ray DeSpain brought this 42 U.S.C. § 1983 action against the Defendants alleging violations of his constitutional rights arising out of the execution of a search warrant at Plaintiff's home on September 18, 2013. [R. 1]  Upon review of the Complaint pursuant to 28 U.S.C. § 1915A, the Court by Memorandum Opinion and Order filed January 28, 2015, allowed the following claims to proceed: failure-to-train claim against the Louisville Metro Government; individual-capacity claims under the Fourth and Fourteenth Amendments to the United States Constitution and Section 10 of the Kentucky Constitution against the Defendants for illegal search and seizure, excessive property damage, excessive force, intentional destruction of physical evidence, and refusal of EMS medical treatment; and an individual-capacity claim against Defendant Stewart for falsifying his investigation report.  [R. 8]

Defendants now move for summary judgment regarding all remaining claims of Plaintiff, [R. 141], and Plaintiff has also moved for summary judgment, [R. 164]. As noted above, the parties have filed responses and replies to both motions, and the matter is ripe for review. [R. 159, R. 162, R. 165, R. 169]

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment if it finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Winkler v. Madison County*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson*, 477 U.S. at 256.  That burden may be satisfied by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case for which he or she bears the burden of proof.  *Celotex Corp.*, 477 U.S. at 323.

Once the moving party satisfies this burden, the non-moving party must then produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citation omitted).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  However, the Court is not obligated to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).  Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*  In fact, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of

the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## III.  ANALYSIS

To state a claim under § 1983, a plaintiff must establish both that (1) he "was deprived of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (citation omitted).  It is undisputed that Defendants were acting under color of state law when the alleged constitutional violations occurred.  "Because '[s]ection 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced[,]' the Court's 'first task . . . is to identify the specific constitutional . . . rights allegedly infringed.'" *Weedman v. Moutardier*, No. 4:19CV-00131-JHM, 2021 WL 2604042, at *2–3 (W.D. Ky. June 24, 2021) (quoting *Meals v. City of Memphis, Tenn.*, 493 F.3d 720, 727–28 (6th Cir. 2007) (citations omitted)).  As discussed above, Plaintiff alleges that Defendants violated his Fourth and Fourteenth Amendment rights.

The Individual Defendants contend that they are entitled to qualified immunity on Plaintiff's Fourth and Fourteenth Amendment claims asserted against them in their individual capacity and seek summary judgment on those claims. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). "To demonstrate that Defendants are not entitled to qualified immunity, [Plaintiff] must prove that a constitutional right was violated and that the right was clearly established at the time of the violation." *Weedman*, 2021 WL 2604042, at *3 (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). The Court addresses each of the allegedly unconstitutional actions in turn and finds that Plaintiff has failed to establish a violation of his constitutional rights.

### A. Forged Search Warrant

Plaintiff contends that the search warrant prepared by Defendant Chad Stewart and relied upon by the LMPD in conducting the search was forged and backdated. In support of this allegation, Plaintiff relies on the existence of two warrants which he contends have different signatures. [R. 133, R. 159, R. 164] Defendants argue that summary judgment on this claim is proper because Plaintiff has fully litigated this issue in his criminal case. [R. 141-1, p. 14]

The United States Supreme Court has noted with approval that numerous Courts of Appeals have "held that collateral estoppel applies when § 1983 plaintiffs attempt to relitigate in federal court issues decided against them in state criminal proceedings." *Allen v. McCurry*, 449 U.S. 90, 102 (1980). This is because federal courts must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Id.* at 96. Under Kentucky law, "collateral estoppel requires four elements: (1) the issue in the second case must be the same as the issue in the first case; (2) the issue must have been actually litigated; (3) actually decided; and (4) necessary to the court's judgment." *Harmon v. Harper*, No. 3:19-CV-823-CRS, 2020 WL 3013890, at *2 (W.D. Ky. June 4, 2020) (citation omitted).

The record reflects that the Jefferson Circuit Court and the Kentucky Supreme Court on appeal addressed this exact argument. *See DeSpain v. Commonwealth*, 2018-SC-000198-MR,

2019 WL 6972897, at *8–9 (Ky. Dec. 19, 2019).  In the criminal action, Plaintiff "argued that the duplicate search warrant and search warrant affidavit, both signed by Judge Perry, seemed to have different signatures on the search warrant and it or its copy were 'forged' . . . by the officers at his house and then back-dated later." *Id. at *8.*  However, according to the Kentucky Supreme Court, "[t]he trial court reviewed the signatures and concluded that there did not appear to be any irregularities." *Id.* at *9.  The Kentucky Supreme Court noted that when Plaintiff "brought up the issue at a preliminary conference the trial judge listened to Despain's concerns and examined the documents. The trial court found no reason to suspect the warrant documents had been forged." *Id.*  The Kentucky Supreme Court affirmed this decision.  *Id.*  Accordingly, Plaintiff is collaterally estopped from pursuing his claim that the search warrant relied upon by the Individual Defendants was forged and backdated because these issues were resolved against him in the state court criminal action.  *See Allen*, 449 U.S. at 95–96 (holding that collateral estoppel applies in § 1983 actions).  Summary judgment in favor of Defendants on this claim is granted.

### B.  Unlawful Search and Seizure

LMPD officers executed a search warrant on Plaintiff's house on September 18, 2013.  According to the search warrant affidavit, a reliable confidential informant provided information that "'illegal narcotics, prescription pills, marijuana, along with several stolen and defaced firearms' were located in Despain's house." *DeSpain*, 2019 WL 6972897, at *1.  "The affidavit stated that the informant had been in Despain's house within the last 48 hours and viewed the above referenced items and that Despain regularly kept semi-automatic weapons on his person." *Id.*  "When police officers executed the search warrant, they located two loaded semi-automatic handguns under the couch cushion where Despain was sitting." *Id.*  "They also located nine marijuana plants in a lean-to structure attached to the back of the house, complete with lamps

and a ventilation system.  Officers seized a digital scale, rolling papers, two additional handguns located in Despain's bedroom, a marijuana grower's guidebook and a surveillance system." *Id.* Based on the items recovered, Plaintiff was indicted in the Jefferson Circuit Court on charges of cultivating marijuana (five plants or more) while in possession of a firearm, trafficking in marijuana while in possession of a firearm, and possession of a handgun by a convicted felon. *DeSpain*, 2019 WL 6972897, at *1.

In this action, Plaintiff alleges that that Defendants violated his constitutional rights by executing an unlawful search and seizure.  [R. 133, R. 159, R. 164]  Specifically, in addition to his claim that the search warrant was forged, Plaintiff asserts that Detective Stewart intentionally falsified his September 18, 2013, affidavit, the search warrant, and the investigation report.  [R. 159, pp. 1–6; R. 164, pp. 3–12; R. 164-1, pp. 1–3, 4]  Plaintiff also makes additional allegations regarding the Individual Defendants' failure to comply with certain LMPD policies.  [R. 164, p. 9]  Defendants argue that Plaintiff is collaterally estopped from asserting the majority of this Fourth Amendment claim because the constitutionality of the search warrant and the subsequent search was previously litigated by Plaintiff in his state criminal case.  [R. 141-1, pp. 14–16; R. 165, pp. 11–17]

### 1. *Challenge to the Affidavit, Warrant, and Investigation Report*

Collateral estoppel bars the relitigation of the issue of probable cause for the issuance of a search warrant in a later § 1983 suit.  *See generally Allen v. McCurry*, 449 U.S. 90, 102 (1980). Here, prior to his criminal trial, Plaintiff litigated the validity of the search warrant arguing that the warrant was invalid and the affidavit supporting the warrant contained "intentional and/or reckless omissions and misrepresentations."  *DeSpain*, 2019 WL 6972897, at *7.  Specifically, Plaintiff asserted that (1) he knew who the informant was; (2) he believed the informant did not

see any of the items listed in the warrant; (3) Detective "Stewart could not have gathered the information and completed the search warrant in the time claimed;" and (4) Detective Stewart had discussed the investigation with his step-daughter's boyfriend Officer Boeckman and failed to disclose this information in the affidavit. *Id.* The trial court and Kentucky Supreme Court found that "the informant's reliability was attested to and detailed information was provided to the issuing judge that established a substantial basis to merit a finding of probable cause." *Id.* Additionally, the Kentucky Supreme Court held that even if the information provided in the affidavit regarding the potential of prescription pills, semi-automatic weapons, and defaced firearms located at the residence was inaccurate and stripped from the affidavit, "sufficient accuracies remain, and the search warrant remains valid." *Id.* at *8.

Plaintiff unsuccessfully litigated his Fourth Amendment search and seizure claim in Kentucky state courts. Accordingly, the doctrine of collateral estoppel applies to bar relitigation of the validity of the August 18, 2013, search and seizure in this action. *See Allen*, 449 U.S. at 95–96; *Gray v. Lexington-Fayette Urb. County. Gov't*, No. 5:13-CV-045-DCR, 2013 WL 3322609, at *10 (E.D. Ky. July 1, 2013). Thus, with respect to this claim, the Court will grant Defendants' Motion for Summary Judgment, [R. 141], and deny Plaintiff's Motion for Summary Judgment, [R. 164].

### 2. Other Challenges

Plaintiff asserts that "Defendants intentionally neglected to complete/approve a risk assessment matrix, . . . to obtain prior approval from a lieutenant or above, . . . to describe the circumstances that he/she believes justify the necessity for a no-knock search warrant, . . . [and] to verbally advise the reviewing Judge that he/she is requesting a no-knock search warrant." [R. 165, p. 9]

- 8 -

Plaintiff's claims are refuted by the evidence of record. The record reflects that Defendant Stewart completed the Risk Assessment Matrix and obtained approval from "a lieutenant or above" who approved a "no-knock" plan due to the "subject's history and current info from weapons." [R. 141-5, p. 4, R. 159-1]  Furthermore, Plaintiff's stated concern with the Risk Assessment Matrix's timestamps of 1300hrs for completion and 1500hrs for authorization does not render the utilization of the SWAT Team improper.  The record reflects that the Individual Defendants initiated the search of Plaintiff's residence at 1630hrs [R 141-14], which occurred after the authorization of the search warrant and after the SWAT Team Commanding Officer activated the SWAT Team upon review of the Risk Assessment Matrix completed by Defendant Stewart.  [R. 141-5, p. 4]

Further, "[g]enerally, the police must knock and announce their presence before they enter a residence to execute a search warrant." *Moore v. City of Memphis*, 853 F.3d 866, 870–71 (6th Cir. 2017) (citing *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995)).  However, "that rule does not apply if the officers 'have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile[.]'" *Id.* at 871 (quoting *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)); *see also Doran v. Eckold*, 409 F.3d 958, 964–965 (8th Cir. 2005) (explaining that "for Fourth Amendment purposes, the relevant question is whether the police have reasonable suspicion of exigent circumstances at the time they execute the warrant").

Here, the record reflects that the risk assessment performed by Detective Stewart produced a score of 59, necessitating SWAT Team activation.  [R. 141-5; R. 159-6, Stewart Aff. at ¶ 5]  A review of the risk revealed that Plaintiff had been previously convicted of murder and robbery, was always armed, and had a history of using firearms during the commission of a

crime.  [R. 141-5, pp. 1–2]  Thus, the evidence of record demonstrates that the officers had

reason to believe that Plaintiff would pose an immediate threat to their safety. Stated another

way, the evidence demonstrates that the officers' decision not to knock and announce their

presence was reasonable under the circumstances. Plaintiff has not presented any evidence to the

contrary. The Court therefore grants summary judgment in favor of Defendants on this claim.

### C.  Excessive Property Damage

Plaintiff maintains that Defendants caused excessive property damage during the search

depriving him of property in violation of the Fourth Amendment.  [R. 159, p. 6–7]  In his

Complaint, Plaintiff alleges that Defendants "knock[ed] out windows and [threw] two flash

grenades into [the] window, setting living room furniture [on] fire and tearing sofa cushions . . .

[while throwing] them [through] the window."  [R. 1, p. 6]  Additionally, Plaintiff contends that

after placing him in custody, Defendants "intentionally knock[ed]-out windows from the inside

with their guns, [and then came] back and knock[ed]-out window casings from the mortar."  *Id.*

Defendants argue that summary judgment is warranted on this claim because Plaintiff's

allegations are not supported by the record, and the evidence of record demonstrates that the

property damage at issue does not rise to the level necessary to justify an excessive property

damage claim. [R. 141-1, pp. 16–20; R. 162, pp. 5–6]

"[D]uring the course of a search, incidental damage to property may occur."  *Cybernet,*

*LLC v. David*, 954 F.3d 162, 170 (4th Cir. 2020).  The Supreme Court has recognized that

"officers executing search warrants on occasion must damage property in order to perform their

duty."  *Dalia v. United States*, 441 U.S. 238, 258 (1979) (citations omitted).  "This is not at all to

suggest that officers may ransack premises at will."  *Cybernet*, 954 F.3d at 168.  Courts

recognize that the "'excessive or unnecessary destruction of property in the course of a search

may violate the Fourth Amendment' and serve as a basis for liability under 42 U.S.C. § 1983."

*Id.* (quoting *United States v. Ramirez*, 523 U.S. 65, 71 (1998)).  However, the type of

"exceptional" damage necessary to trigger these constitutional concerns must be "something

more than accidental or incidental injury to property in the course of working within the

parameters of a lawful search warrant." *Id.* at 170 (citation omitted). In considering this issue,

courts apply a "reasonableness" standard. *Hill v. McIntyre*, 884 F.2d 271, 278 (6th Cir. 1989);

*see also Pena v. Marcus*, 715 F. App'x 981, 985 (11th Cir. 2017) (citation omitted).  "The

reasonableness of the damage must be evaluated with reference to the target of the search."

*Chumley v. Miami County., Ohio*, No. 3:14-CV-16, 2015 WL 859570, at *10 (S.D. Ohio Feb. 27,

2015) (quoting *Koller v. Hilderbrand*, 933 F.Supp.2d 272, 278 (D. Conn. 2013)) (internal

quotation marks omitted).

On this point, the Court notes that "establishing as a matter of law that property damage

in the course of a search was the result of reasonable and nonmalicious police action presents a

difficult task at the summary judgment stage." *Koller*, 933 F.Supp.2d at 280 (citations omitted).

Nevertheless, courts considering motions for summary judgment have concluded as a matter of

law that alleged property damage was reasonable under the Fourth Amendment. *See, e.g.*, *id.*;

*Chumley*, 2015 WL 859570, at *11.

In this case, the evidence of record supports the conclusion that Defendants' conduct did

not amount to a constitutional violation. *See id.* at *11 (emptying closets, dumping items on a

bed, and leaving the home in disarray after a search did not amount to a constitutional violation).

Much of the property damage occurred as the SWAT Team Members[2] quickly entered the house

---

[2] While the Court dismissed the 24 SWAT Team Members in a separate Memorandum Opinion and Order entered this day, the record does not reflect whether Plaintiff alleges only SWAT Team Members destroyed property as opposed to the other officers present at the scene.  Thus, the Court addresses each allegation of property damage.

and were attempting to expeditiously ensure that there were no persons within who could threaten their safety. As discussed above, due to the Risk Assessment Matrix and the resulting score, the SWAT Team was aware that Plaintiff was a violent felon with a substantial criminal history. [R.141-14, Humphrey Aff., ¶¶ 3–4] The SWAT Team was also aware that an informant reported that Plaintiff had multiple firearms in the residence and was known to always have one on or around him. [R.141-14, Humphrey Aff., ¶ 3] In light of this information, SWAT Command determined utilizing a flash-bang was necessary to disorient Plaintiff. To use the flash-bang necessitated breaking the living room window. [R. 141-6, Cameras 2 and 7, 16:29:23–16:29:26] The flash-bang caused a very small fire that burned for less than 20 seconds and was promptly extinguished by SWAT. [R. 141-6, Camera 7, 16:29:27–16:29:53] Similarly, SWAT broke additional windows in the rear of the residence in an effort to distract and disorient Plaintiff during the initial entry into the premises. [R, 141-13, Humphrey Aff., ¶ 9] With respect to any windows broken from the inside, SWAT Team Member Paul Humphrey testified that they were broken to let smoke out caused by the distraction device. *Id.*; [R. 141-6, Camera 6, 16:30:36–16:30:52]

The information regarding the safety threat posed by Plaintiff made it reasonable for SWAT Team Members to quickly enter and search the house, even though this unfortunately resulted in some damage to the property. *See, e.g.*, *Pena*, 715 F. App'x at 985; *United States v. Banks*, 540 U.S. 31,  37 (2003) (explaining that "police in exigent circumstances may damage premises so far as necessary for a no-knock entrance"); *Ramirez*, 523 U.S. at 70–72 (finding it reasonable for officers to break a window to utilize a flash-bang device); *Moore*, 853 F.3d at 870–71 (affirming district court's grant of summary judgment and finding that the use of flash-bangs was reasonable).

Further, with respect to any damage to Plaintiff's couch cushions, the record reflects that SWAT officers did toss his couch cushions outside the living room window while searching the premises. [R. 141-6, Cameras 2 and 7, 9/18/13 at 16:33:37–16:34:19] Defendants maintain that the security footage reflects that the officers did so to declutter the living room area to effectively continue the search for firearms. [R. 141-1, p. 19] While removal of the cushions from the home seems unusual, such conduct does not amount to a constitutional violation. *See Koller*, 933 F. Supp. 2d at 279; *Brown v. City of Utica*, 854 F. Supp. 2d 255, 262 (N.D.N.Y. 2012) (officers left the home in disarray with personal items and garbage strewn about).

Furthermore, Plaintiff failed to identify which defendants are responsible for any of the alleged property damage. Plaintiff bears "the burden of establishing that individual officers are directly responsible for the alleged damage." *Chumley*, 2015 WL 859570, at *11; *Gordon v. Louisville/Jefferson County Metro Gov't*, 486 F. App'x 534, 541 (6th Cir. 2012) (affirming summary judgment in favor of officers where plaintiff presented no evidence that any particular officer was responsible for the damage alleged). For this reason, and the reasons stated above, summary judgment in favor of Defendants is granted as to this claim.

### D. Refusal of EMS Treatment

Plaintiff argues that he suffered injury during his arrest and was refused medical treatment by Defendants on the day of the execution of the search warrant in violation of the Fourth And Fourteenth Amendments. [R. 1, ¶ 18] Specifically, Plaintiff alleges that Defendants "refused all EMS medical treatment other than [taser] darts being removed from plaintiff's back." *Id.* Additionally, Plaintiff contends that he asked to be taken to the hospital due to having previous neck surgeries, but Defendants refused his request. [R. 159, p. 7] In support of his claim, Plaintiff submitted medical documentation dated 16 to 19 days after the execution of

the search warrant which, according to Plaintiff, demonstrates that he was still in severe pain and had bruises to both sides of his lower back.  [R. 159-10, pp. 1–2]  Defendants argue that summary judgment is appropriate, citing to evidence that Plaintiff was not refused medical treatment.  [R. 141-1, p. 20–22, R. 162, pp. 7–8]

The evidence of record refutes Plaintiff's claim. The record reflects that the SWAT Team had a medic assigned and present for the search, and Major Paul Humphrey testified that a standby EMS vehicle was on site.  [R. 141-13, Humphrey Aff., ¶10]  Further, Plaintiff concedes that medical aid was rendered to him on scene.  Specifically, Plaintiff states that "[w]hen plaintiff asked the defendants to be taken to the hospital, defendants refused the request, and instead placed a hard collar on to the plaintiff[.]"  [R. 159, p. 7]  Plaintiff also states in a December 10, 2018 letter sent to Chief Steve Conrad that EMS "wiped off my bloody head [and] placed a bandage on the cut."  [R. 146-2, p. 3]  Thus, the record reveals that Defendants provided medical care to Plaintiff at the scene of his arrest. Additionally, the record reflects that Plaintiff was seen by medical staff at the Kentucky State Reformatory on October 4, 2013, and was prescribed Tylenol and Ibuprofen.  [R. 159-10, pp. 1–2].

It is well settled that the Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "Where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution." *Morgan v. Stansberry*, No. 1:18-CV-256, 2019 WL 6742915, at *8 (E.D. Tenn. Dec. 11, 2019) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)).  This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* (quoting *Westlake*, 537 F.2d at 860 n. 5) (internal quotation marks omitted).  "Rather, to state a constitutional claim, such a prisoner

must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"

*Id.* (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  Here, the evidence of record demonstrates that Plaintiff received medical treatment at the scene. Though he might have preferred additional care, Plaintiff's preference to be transferred to the hospital rather than treated by EMS on scene does not rise to a constitutional deprivation under these circumstances. Accordingly, the Court grants summary judgment in favor of Defendants on this claim.

### E. Excessive Force

Plaintiff alleges that Defendants used excessive force in execution of the search warrant in violation of the Fourth Amendment.  [R. 1, ¶ 15]  Plaintiff contends that during the execution of the warrant, Defendants utilized a dynamic entry by detonating flash-bangs as the officers stormed through the front door.  [R. 164-1, p. 3]  Plaintiff asserts that he did not resist arrest. Instead, after the flash-bang was detonated, he placed his hands in front of his face and was subsequently kicked twice in the chest by a SWAT Team Member.  [R. 1, p. 6; R. 159, p. 8; R. 164-1, p. 3]  Plaintiff further states that he was thrown to the floor, beaten, punched, handcuffed, and then beaten and kicked some more on the porch by four SWAT Team Members.  [R. 1, p. 6; R. 164-1, p. 3]  Defendants respond that the SWAT Team's actions were objectively reasonable under the totality of the circumstances as confirmed by the security videotape submitted to the Court.[3]  [R. 141-1, p. 23; R. 141-6; R. 162, p. 6–7]

Plaintiff's excessive force claim arises out of his arrest by Defendants and is therefore properly analyzed under the Fourth Amendment's "reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  In determining whether Defendants used excessive force

---

[3] Both parties represent that the security videotape clearly supports their position on the excessive force claim.  The only clear information from the security videotape is that SWAT Defendants secured the apprehension of Plaintiff within 90 seconds.  After the initial two kicks of Plaintiff by one SWAT Team Member, the remainder of the arrest is obscured by officer activity, smoke, and the location of the cameras.

against Plaintiff, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "It is axiomatic that a citizen has a constitutional right, secured by the Fourth Amendment, not to be subjected to excessive force during an arrest, investigatory stop, or other 'seizure' of his person." *Weedman*, 2021 WL 2604042, at *3 (citing *Graham*, 490 U.S. at 395). "Moreover, citizens have a constitutional right to be free from police force when they are fully compliant and not resisting reasonable police action." *Id.* at *3 (W.D. Ky. June 24, 2021); *see also Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012); *Williams v. Dame*, No. 4:17-CV-P67-JHM, 2019 WL 691410, at *3 (W.D. Ky. Feb. 19, 2019).

In this case, it is undisputed that the SWAT Team was in charge of the entry into the premises for the execution of the search warrant in question. [R. 141-15, Stewart Aff. ¶ 4; R. 141-13, Humphrey Aff. ¶ 8] It is further undisputed that the SWAT Team secured Plaintiff during the execution of the search warrant. [R. 141-13, Humphrey Aff. ¶ 5] Thus, with the previous dismissal of the SWAT Defendants on statute of limitations grounds, the bulk of Plaintiff's excessive force claim has essentially been dismissed.

The only remaining timely-served Defendant associated with the SWAT Team is Defendant Ryan Bates who Plaintiff identified in his Complaint as the Unit Supervisor/Commander of the LMPD SWAT Team. [R. 1, p. 4; R. 141-14, Items Seized Report listing Viper Squad] In his Complaint, Plaintiff alleges that Bates had a duty and was legally responsible for all operations, commands, and equipment, along with the proper training to prevent civil right violations. *Id.* Absent his mention in the Complaint, Plaintiff did not allege nor provide any evidence that Officer Bates was a member of the SWAT Team that executed the search in question, was one of the five officers who allegedly used excessive force on Plaintiff,

or authorized, approved, or acquiesced in the alleged unconstitutional conduct.  The mere fact

that Officer Bates is a supervisor does not establish liability on his part.  *Monell v. Dep't of*

*Social Services*, 436 U.S. 658, 690 n. 55 (1978).  The doctrine of respondeat superior, or the right

to control employees, does not apply in § 1983 actions to impute liability onto supervisors.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d

416, 421 (6th Cir. 1984).  Rather, to establish supervisory liability in a § 1983 action,

> [t]here must be a showing that the supervisor encouraged the specific incident of
> misconduct or in some other way directly participated in it.  At a minimum, a §
> 1983 plaintiff must show that a supervisory official at least implicitly authorized,
> approved or knowingly acquiesced in the unconstitutional conduct of the offending
> subordinate.

*Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872–874 (6th Cir.

1982)).

Finally, in as much as the remaining Defendants and potentially Officer Bates were a part

of the preparation leading up to the execution of the search warrant, the Court finds that the

evidence of record does not support Plaintiff's excessive force claims. The use of a flash-bang

device in the execution of the search warrant does not necessarily constitute excessive force.  *See*

*Ramage v. Louisville/Jefferson County Metro Gov't*, 520 F. App'x 341, 347 (6th Cir. 2013).  As

discussed above, Defendants had reason to believe they would encounter a dangerous, violent

suspect.  The use of a flash-bang device "is more likely to be reasonable if the officers expect to

encounter an individual who is known to be armed and dangerous or who has a history of

violence." *Z.J. by & through Jones v. Kansas City Bd. of Police Commissioners*, 931 F.3d 672,

682 (8th Cir. 2019).  Additionally, its "use is also more likely to be reasonable if the situation

presents a need for the element of surprise in order to protect the safety of officers or others."

*Id.*; *see also Ramage*, 520 F. App'x at 347; *Moore*, 853 F.3d at 870–71.  Thus, the factual

circumstances of the present case justified the use of the flash-bang device.  Plaintiff does not

cite to any evidence of record suggesting otherwise. Accordingly, summary judgment is granted

in Defendants' favor.

### F.  Failure to Train

Plaintiff maintains that Louisville Metro Government failed to train LMPD and SWAT

officers in the execution of a search warrant.  [R. 1, ¶ 4]  Plaintiff alleges that Detective Stewart

informed Plaintiff during the search that the Viper Squad did not need a search warrant.  [R. 1,

¶ 12]  In his Response to Defendants' Motion for Summary Judgment, Plaintiff also asserts that

the practice of falsifying affidavits and forging search warrants is a common practice within the

LMPD.  [R. 133, p. 2; R. 159, pp. 5–6]  In support of this claim, Plaintiff cites the conviction of

two LMPD police officers in 2008 for falsifying search warrant affidavits.  *Id.*  Defendant argues

that summary judgment should be granted on this claim because Plaintiff fails to point to a direct

policy, custom, or practice that satisfies the standard set forth in *Monell v. Dep't of Soc. Servs.*,

436 U.S. 658, 694 (1978).  [R. 141-1, p. 27]

"A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the

alleged federal violation occurred because of a municipal policy or custom."  *Burgess v. Fischer*,

735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694).  One way to prove an unlawful

policy or custom is to show a policy of inadequate training or supervision.  *See City of Canton v.*

*Harris*, 489 U.S. 378, 387 (1989).  To succeed on a municipal failure-to-train claim,

> [a] plaintiff must establish that the municipality, through its policymakers, failed to
> train or supervise employees despite: 1) having actual or constructive knowledge
> of a pattern of similar constitutional violations by untrained employees . . . or 2) the
> fact that the constitutional violation alleged was a patently obvious and "highly
> predictable consequence" of inadequate training.

*Essex v. County of Livingston*, 518 F. App'x 351, 355–56 (6th Cir. 2013) (internal citations omitted).

In the present case, Plaintiff does not point to any unconstitutional formal or informal policy or custom regarding the execution of a search warrant.  Even if Detective Stewart made the statement alleged by Plaintiff, the record reflects that a search warrant was obtained prior to the execution of the search.  [R. 141-4, pp. 1–5]; *DeSpain v. Commonwealth,* 2018-SC-000198-MR, 2019 WL 6972897, at *8–9 (Dec. 19, 2019).  While Plaintiff identifies other LMPD policies regarding the preparation of risk assessments and no-knock warrants, [R. 159, pp. 2–4], Plaintiff does not argue that these policies are unconstitutional.  Rather, Plaintiff maintains that certain officers failed to follow those policies.  *Id*.  No evidence in the record suggests that the Louisville Metro Government failed to train its officers on the procurement and execution of search warrants.

Furthermore, the other prior instances of misconduct by "rogue" police officers cited by Plaintiff fail to support his failure-to-train case.  [R. 133, p. 2]  Plaintiff provides no information that suggests that these "rogue" officers were not properly trained or that LMPD acquiesced to their unlawful conduct.  In fact, the tampering with public records by these officers occurred from 1997 to 2002, and they were prosecuted for their illegal conduct.  [R. 162, pp. 9–10]

 The evidence does not support a failure-to-train claim against the municipality.  Accordingly, the Court will grant Defendants' motion for summary judgment on this claim.

### G.  Section 10 of the Kentucky Constitution

Plaintiff also brings a state-law claim under Section 10 of the Kentucky Constitution.  [R. 1, pp. 6–8]  Defendants argue that Kentucky does not recognize a private cause of action for alleged violations of state constitutional rights.  [R. 139-1, p. 9]  Defendants made this same

argument in a Motion to Dismiss, [R. 139]. The Court has already addressed that argument in an order entered this same date, granting Defendants' Motion to Dismiss on that issue and dismissing Plaintiff's state law claim under Section 10 of the Kentucky Constitution.

**H. Plaintiff's Motion to Request an Expert [R. 172]**

Also before the Court is Plaintiff's Motion to Request an Expert "Handwriting Analysis" Witness to Assist with Scientific, Technical, or Other Specialized Knowledge in Authenticating Legal Documents, [R. 172]. In the Motion, Plaintiff cites Federal Rule of Evidence 706 and asks the Court to appoint a "Handwriting Analysis Expert Witness." *Id.* at 1. He argues that a handwriting expert is necessary to prove his forged affidavit/forged search warrant arguments. However, as discussed above, that claim is barred by the doctrine of collateral estoppel, and the Court will grant summary judgment in favor of Defendants on that claim. *See supra* Section III(B)(1). Accordingly, the Court will deny Plaintiff's Motion to Request an Expert as moot.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [**R. 141**] is **GRANTED**, and Plaintiff's Motion for Summary Judgment [**R. 164**] is **DENIED**.  A Judgment shall be entered consistent with this Memorandum Opinion and Order.

It is also **ORDERED** that Plaintiff's Motion to Request an Expert "Handwriting Analysis" Witness to Assist with Scientific, Technical, or Other Specialized Knowledge in Authenticating Legal Documents, [**R. 172**], is **DENIED as moot.**

This the 19th day of August, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc:    Plaintiff, *pro se*
       counsel of record